Argued June 18, affirmed July 16, petition for rehearing denied
August 23, petition for review denied October 23, 1973

IN THE MATTER OF S., A CHILD.

# STATE OF OREGON, EX REL JUVENILE DEPARTMENT OF LANE COUNTY, *Respondent,* v. S. (No. 7163), *Appellant.*

511 P2d 878

*Max S. Taggart, II,* Springfield, argued the cause for appellant. With him on the briefs were Sanders, Lively & Wiswall, Springfield.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the

brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

On November 1, 1972 a new petition concerning the above child, who was already a ward of the juvenile court by reason of earlier proceedings, was filed in the circuit court for Lane County. Omitting all but the jurisdictional allegations, it alleged:

"* * * * *

"2. The child ———— is within the jurisdiction of the court by reason of the following facts:

"Behavior of said child, a resident of Lane County, Oregon, is such as to endanger her own welfare by reason of the following facts:

"(a) Said child left her placement at the Louise Home, remaining away without permission, at three different times, to-wit, the 21st day of July, 1971, the 13th of August, 1971, and the 12th of September, 1971.

"(b) On or about the 10th day of January, 1972, said child left the home of her father * * * and remained away without permission, keeping her whereabouts unknown until apprehended by authorities in Portland, Oregon, on the 13th day of January, 1972.

"(c) On or about the 20th day of April, 1972, said child left the home of her mother * * * and remained away without permission, keeping her whereabouts unknown until apprehended on the 26th day of April, 1972, by authorities in Portland, Oregon.

"(d) On or about the 10th day of May, 1972, said child left her placement at the * * * Shelter Care Home and remained away without permission, keeping her whereabouts unknown until apprehended on the 13th day of May, 1972, by authorities in Portland, Oregon.

"(e) Said child left her placement at the * * * foster home in Portland, Oregon, on two occasions, to-wit, on the 12th day of August, 1972, and on the 30th day of September, 1972.

"*  *  *  *  *."

Counsel was appointed for the child. The matter came on for hearing on December 4, 1972. Following the hearing the court on December 6 by order found

"* * * the allegations of the petition filed November 1, 1972 to be true and further, the behavior of the child is such as to endanger her own welfare;"

and continued the matter for disposition. On December 8, 1972 it entered its order committing the child

"* * * to the custody of the Children's Services Division of the State of Oregon for placement in a Juvenile Training School."

The child appeals, assigning as the sole error the finding by the court that her behavior was "* * * such as to endanger her own welfare."

The transcript of the hearing reveals:

"MR. THORP [counsel for child]: Your Honor, we are prepared to admit the factual allegations in the petition, that is, Subparagraphs A through E. We are not prepared to admit that such conduct is sufficient to endanger the welfare of the child. There are five instances of runaway, but we will admit those facts.

"*  *  *  *  *

"MR. THORP: We have no witnesses we wish to call, your Honor.

"THE COURT: All right. And do you wish to make some argument in support of your position?

"MR. THORP: Only with respect to disposition, your Honor. I'm not sure whether Mr. Luisi is prepared to proceed to the dispositional phase.

"We are prepared to admit the jurisdictional facts, but we are going to contest any attempt, obviously, to commit to secure custody."

The court then proceeded to hear counsel, receive in the form of exhibits medical, psychological, and social reports relating to the child's history and prognosis, and such testimony as was offered by and on behalf of the child, the Welfare Department and the Juvenile Department. The court also had the official court file.

From our examination of the evidence, the reports, records and arguments of counsel, we conclude that the court did correctly conclude that the child by her own behavior was indeed endangering her own welfare, and that for her own best interest commitment to a training school for children requiring secure custody was the best available disposition. Such were the recommendations of the psychologist and of the social worker. On her last runaway, which occurred on November 4, while she was on a temporary placement leave from the Lane County juvenile detention center, she had at the age of 14 gone a distance of over 100 miles to the home of her 26-year-old "boyfriend," an ex-convict. There she was beaten up by him, and was picked up by the Portland police on November 7. On her return from two of the earlier runaways referred to in the petition it was found she

had contracted a venereal disease. We see no useful purpose in detailing the remaining evidence.

It is true as she contends that the 1971 legislature repealed former ORS 419.509 (3) allowing commitment of a persistent runaway to a secure custody juvenile institution. But ORS 419.509 now provides that a child may be committed to such an institution when:

"(1) A child placed in the legal custody of the Children's Services Division shall be placed in a juvenile training school or in a private institution operated as a training school for children requiring secure custody in the following cases and no other:.

"(a) The child is found to be within the jurisdiction of the juvenile court by reason of a ground set forth in paragraph (a) or (b) of subsection (1) of ORS 419.476, or *the behavior of the child is found to be such as to endanger his own welfare* or that of others; and

"(b) The juvenile court having jurisdiction so orders." (Emphasis supplied.) ORS 419.509 (1).

The order was proper under the italicized language and amply supported by the evidence.

Affirmed.